**Electronically Filed
Intermediate Court of Appeals
CAAP-15-0000942
17-OCT-2019
07:52 AM**

NO. CAAP-15-0000942

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

WV, Plaintiff-Appellant-Cross-Appellee,
v.
MV, Defendant-Appellee-Cross-Appellant

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-D NO. 12-1-1968)

MEMORANDUM OPINION
(By: Fujise, Presiding Judge, Leonard and Hiraoka, JJ.)

Plaintiff-Appellant-Cross-Appellee **WV** and Defendant-Appellee-Cross-Appellant **MV** were married, owned a house (the **House**), and had four children: **SV1**, **SV2**, **SV3**, and **MV2**. They were divorced on April 9, 2014. In April 2015 they each filed a motion for post-decree relief. The Family Court of the First Circuit (**Family Court**)[1] disposed of the motions in a series of orders. For the reasons explained below, we affirm the Family Court's August 14, 2015 order regarding support for SV3 and MV2, and we also affirm the Family Court's February 1, 2016 order granting MV's motion for reconsideration on disposition of the marital residence.

## I.

Hawai'i divorce cases can involve up to four parts: (1) dissolution of the marriage; (2) child custody, visitation, and support; (3) spousal support; and (4) division and distribution of property and debts. Eaton v. Eaton, 7 Haw. App. 111,

---

[1] The Honorable Sherri L. Iha presided.

118, 748 P.2d 801, 805 (1987). This appeal raises issues of child support and property division. The Family Court entered a divorce decree (**Divorce Decree**) on April 9, 2014. At that time SV1 was 23 years old, SV2 was 22, and neither was dependent upon their parents for support. SV3 was a minor; WV was awarded sole legal and physical custody. MV2 was 18 and was dependent upon his parents for educational support. The Divorce Decree stated, in relevant part:

> 6. <u>Child Support</u>.
>
> a) <u>For [SV3]</u>. [MV] shall pay to [WV] as and for support, maintenance and education of [SV3] the sum of EIGHT HUNDRED THIRTY ONE AND NO/100 DOLLARS ($831.00) per month, commencing on the 5th day of May, 2014. Payments shall continue until said child attains the age of 18 years or graduates from high school or discontinues high school whichever occurs last, subject to further order of the Court. . . .
>
> b) <u>For [MV2]</u>. [WV] and [MV] shall each pay child support to the adult, educationally dependent child [MV2]. [MV] shall pay EIGHT HUNDRED THIRTY ONE AND NO/100 DOLLARS ($831.00) per month and [WV] shall pay FOUR HUNDRED EIGHTEEN AND NO/100 DOLLARS ($418.00) commencing on the 5th day of May, 2014. Payment shall be made directly to [MV2] or to an account for his use and benefit. Payments shall continue so long as [MV2] is enrolled on a full-time basis at an accredited college or university, or in a vocational or trade school, has not graduated, and has not attained the age of 23 years, subject to further order of the Court.
>
> c) All of the foregoing shall be subject to further order of the Court.
>
> . . . .
>
> 19. <u>Real Property</u>. The [House], currently held by the parties as Tenants by the Entirety, is awarded to [MV] as tenant in severalty effective upon the entry of the <u>Decree</u> in this matter. Both parties shall vacate the [House] no later than sixty days from the conclusion of trial (no later than May 11, 2014). [MV] shall thereafter sell the [House] or negotiate the disposition of the [House] with the mortgagor or its successor, in settlement of that certain litigation styled <u>[WV and MV] v. Carrington Mortgage Services, LLC, et. al</u>, Civil No. 10-00558-LEK-RLP now pending in the United States District Court for the District of Hawaii, and a related appeal now pending in the United States Court of Appeals for the Ninth Circuit. In that regard, [MV] shall have full authority to negotiate the release and dismissal of the claims of both parties plaintiff in that action, provided, however, that any liability resulting therefrom shall be the sole responsibility of [MV], and he shall defend and indemnify [WV] thereon. In the event that the sale or settlement yields any net proceeds, said proceeds shall be divided equally. Any deficiency, including any future deficiency judgment should the [House] be foreclosed upon, shall be the sole responsibility of [MV], to include that certain mortgage owing to Deutche [sic] Bank National Trust, its

successors or assigns, in the approximate amount of EIGHT
HUNDRED THIRTY NINE THOUSAND TWO HUNDRED FORTY NINE AND
NO/100 DOLLARS ($839,249.00). [MV] shall inform [WV] of the
disposition of the [House] and of any settlement of the
pending litigation in a timely manner. Except as otherwise
limited by Statute, Court Rule or case authority, the Court
shall have the ongoing authority and personal and subject
matter jurisdiction to make any other just and equitable
orders which may be necessary to enforce the intended
agreement and specific provisions set forth herein. This
enforcement jurisdiction shall specifically include, but not
be limited to, authorizing the Chief Court Administrator of
the First Circuit Court to execute necessary documents in
the event that a party unreasonably fails to do so.

One year later, on April 9, 2015, WV filed a motion for post-decree relief. She sought modification of MV's child support obligations for SV3 (who had by then been accepted for enrollment in a four-year college) and for MV2, "in accordance with child support guidelines based on an increase in [MV's] income." She also claimed, among other things, that MV "has not sold or negotiated the disposition of the [House] as ordered in [the Divorce] Decree. [MV] has failed to negotiate the release and dismissal of Civil No. 10-00558-LEK-RLP." She sought "(1) An order regarding the [House] that [MV] immediately list and sell the [House] or negotiate a deed in lieu of payment, sale or foreclosure. (2) An order that [MV] settle the Civil Case referenced . . . above. (3) An order that [MV] immediately remove/dispose of all items from the [House]."[2] WV's motion was set for hearing on May 6, 2015.

MV filed his own motion for post-decree relief on April 28, 2015. He sought, among other things, to "[m]odify paragraph 19 of [the Divorce] Decree re [MV] vacating property and sharing proceeds of sale." He claimed that the "[n]ote exclusively in [MV]'s name has been modified. Foreclosure has been avoided. Requires [MV] to be owner-occupant." MV's motion was supported by his declaration stating that he purchased the House in 2005 using two mortgages. He was the sole obligor on the notes that were secured by the mortgages. One note and

---

[2]     WV's opening brief concedes that MV vacated the House by May 11, 2014, the deadline established in the Divorce Decree, and that the House remained vacant until April 1, 2015, when MV accepted the mortgagee's offer to modify the note and mortgage on the House (which required that MV be the owner-occupant).

mortgage was renegotiated and paid in full. MV stopped making payments under the remaining note and mortgage in 2009. On April 9, 2014 (the date the divorce decree was entered), MV began negotiating with the lender. In March 2015 the lender offered a loan modification under the Home Affordable Modification Program (**HAMP**). The HAMP modification required that MV be the owner-occupant of the House. The deadline for MV to accept the HAMP modification and to make the first payment was April 1, 2015. MV accepted the offer. According to MV's declaration submitted with his motion, "This resulted in the lender reducing the loan amount from $937,296.85 to $742,688.00."

MV's motion for post-decree relief also sought reduction or elimination of payments to MV2 or, alternatively, an unmet needs analysis to determine MV2's unmet higher education needs. MV's motion for post-decree relief was also set for hearing on May 6, 2015.

On May 6, 2015, the Family Court ordered MV to provide WV with copies of the loan modification and civil lawsuit settlement documents by June 12, 2015. MV was allowed to live in the House "while the loan modification process is ongoing or until further order of the court." The hearing was continued to June 19, 2015. The Family Court's written order was entered on May 13, 2015.

On June 19, 2015, the Family Court heard testimony and argument. The court ordered that WV sign a quitclaim deed conveying her title and interest in the House to MV. The court ordered MV to provide WV with proof of loan modification by August 7, 2015, and scheduled a further hearing regarding the House for August 14, 2015. On the child support issue the court ordered that support for SV3 and MV2 be continued according to the Hawaiʻi Child Support Guidelines[3] until SV3 and MV2 each reach age 23 or was no longer a full-time student, payment to be made directly to each child. The written order was entered on July 2, 2015. On July 13, 2015, WV filed a motion for

_____

[3] The Hawaiʻi Child Support Guidelines are promulgated by the Family Courts of Hawaiʻi pursuant to HRS § 576D-7(a) and are used by the family courts to determine monthly child support. PO v. JS, 139 Hawaiʻi 434, 441, 393 P.3d 986, 993 (2017).

reconsideration of the July 2, 2015 order. On August 4, 2015, the Family Court entered an order granting reconsideration and amending and clarifying its July 2, 2015 order, stating that support payments for SV3 and MV2 were to be paid through the Hawai'i Child Support Enforcement Agency (**CSEA**) directly to the children and not through either parent.

MV appeared at the August 14, 2015 hearing by telephone.[4] After explaining why he was not attending the hearing in person, he stated that he had paid the real property tax and that the quitclaim deed had been recorded, but he had not received the loan modification documents from the lender. The Family Court received an opinion from WV's appraiser that the exterior appraised value[5] was $868,000 based upon the House being newer and in better condition than the surrounding homes. The court continued the hearing to October 2, 2015, ordered that MV pay WV's attorney fees of $450, and ordered MV to produce loan modification documents and proof of mortgage payments to WV by September 15, 2015. The Family Court's written order was entered on August 14, 2015. Notwithstanding the previous entry of the Family Court's August 4, 2015 order granting reconsideration and amending and clarifying its July 2, 2015 order regarding support for SV3 and MV2, the August 14, 2015 order stated that it was amending the July 2, 2015 order regarding support for SV3[6] and MV2.

On October 2, 2015, the Family Court received additional evidence, heard the parties' arguments, and ruled that MV may continue to occupy the House. The court asked MV about the HAMP modification:

> THE COURT: What has it been modified for?
>
> [MV]: Um, I don't know exactly. So, um, what they're showing on my credit report is 742. Um, and I asked them

---

[4]    MV, a lawyer, was self-represented at the time.

[5]    The appraiser could not obtain access to the House so the value was appraised by "making some assumptions, some basic assumptions on the appearance of the exterior of the house and also the homes surrounding it" which, according to the appraiser, was "real common for us to do exterior appraisals especially when we don't have interior access."

[6]    MV does not challenge his support obligations for SV3.

> what's the final loan, uh, amount?  And they have not told
> me.  So they said they won't know --
>
>          . . . .
>
>          THE COURT: It's re -- been remodified to what?
>
>          [MV]: Uh, I think it's going to be 742, Your Honor,
> but I'm not sure --
>
>          . . . .
>
>          [MV]: -- um, because they haven't -- what they told me
> -- I asked them that specific question, and they said they
> don't know what the modified loan amount is until, um, they
> get the final loan documents.

The Family Court ruled:

> So the loan at the top -- the loan at the time of the
> decree was 839,000.  The modification owed is 742,000.  The
> difference is 97,000. [WV]'s share of the equity will be
> 48,500.

The Family Court's written order was entered on December 16, 2015.  The order stated, in relevant part:

> Decree orders parties to split any proceeds from sale or
> settlement.  The Court finds that the value of the loan at
> the time of the decree was $839,000.  The house loan is
> being modfied [sic] to $742,000 [based upon MV's
> declaration]. [WV]'s share of the proceeds for the
> modification is $48,500. [MV] owes [WV] $48,500.
>
> [MV] needs to start making payments towards that amount
> within one year or [WV] can file a motion for a judgment.
> [WV] is awarded a lien on the property in the amount of
> $48,500.

WV filed her notice of appeal on December 17, 2015, and MV filed his notice of appeal on December 18, 2015.

On December 28, 2015, MV filed a timely motion for reconsideration of the December 16, 2015 order.  The motion was supported by MV's declaration authenticating a Home Affordable Modification Agreement transmitted to MV by letter dated November 10, 2015.  The modification agreement showed a new principal balance of $842,106.80.  MV's motion was heard on January 11, 2016.  MV's then-counsel argued:

> Bottom line, however, is this: As a practical matter,
> [MV] did not find out until after the [October 2, 2015]
> hearing that the folks at Carrington Mortgage had a little
> surprise for him.  And the little surprise, basically, was
> they were not forgiving any part of the mortgage loan, and

> the result of that is that there's no proceeds at all of --
> of this loan modification. . . .
>
> . . . .
>
> [T]he total amount due is $842,106.80 and not the smaller
> amount that you thought, $742,000, when this matter was
> before you for a hearing.

The Family Court asked MV's counsel:

> [THE COURT]: So when did this become available,
> Mr. Farrell? When did this information become available?
>
> [MV's COUNSEL]: Well, so he gets this letter from
> them, it's dated November 17 [sic], and that's when they
> enclose the loan modification document, okay.
>
> THE COURT: Okay.
>
> [MV's COUNSEL]: And that's when he finds out for the
> first time, Oh, guess what? I'm going to have a 112,000-
> dollar balloon payment.
>
> THE COURT: So this information was not available at
> the time of the [October 2, 2015] hearing?
>
> [MV's COUNSEL]: That is absolutely correct.

The court granted reconsideration because the loan modification
agreement was "new evidence that wasn't available at the time of
the [October 2, 2015] hearing" and ordered that MV's counsel
submit an order indicating that the final loan amount was
$842,000 (to refinance a $839,000 loan balance) and therefore
there was no equity to be split between the parties. A written
order was entered on February 1, 2016, stating, in relevant part:

> 2. The second full paragraph of the <u>Order Re
> Plaintiff's Motion and Declaration for Post Decree Relief
> and Defendant's Motion and Declaration for Post Decree
> Relief</u>, filed December 16, 2016 is stricken and replaced
> with the following, <u>nunc pro tunc</u>:
>
> > The Court finds that the value of the loan at
> > the time of the decree was $839,000. The house
> > loan is being modified to $842,106.80. There
> > are no proceeds resulting from the modification.
> > Accordingly, [MV] owes [WV] $0.

WV filed a motion for reconsideration on February 11, 2016. The
Family Court denied reconsideration by order entered on
February 26, 2016. This appeal followed.

## II.

### WV's Appeal

WV raises five points of error. We discuss her fifth point of error first, because it involves the Family Court's jurisdiction over the case.

### A. The Family Court Had Jurisdiction to Rule on MV's Motion for Reconsideration

WV contends that the Family Court erred in issuing its order of February 1, 2016, because it lost jurisdiction when WV's notice of appeal was filed on December 17, 2015 (the day after entry of the December 16, 2015 order). "[T]he general rule is that the filing of a notice of appeal divests the trial court of jurisdiction over the appealed case[.]" Richardson v. Sports Shinko (Waikiki Corp.), 76 Hawai'i 494, 500, 880 P.2d 169, 175 (1994) (citations and footnote omitted). However, Rule 4(a)(3) of the Hawai'i Rules of Appellate Procedure (**HRAP**) (eff. July 1, 2015) provides, in relevant part:

> TIME TO APPEAL AFFECTED BY POST-JUDGENT MOTIONS. If any party files a timely motion for judgment as a matter of law, to amend findings or make additional findings, for a new trial, to reconsider, alter or amend the judgment or order, or for attorney's fees or costs, the time for filing the notice of appeal is extended until 30 days after entry of an order disposing of the motion; provided, that the failure to dispose of any motion by order entered upon the record within 90 days after the date the motion was filed shall constitute a denial of the motion.
>
> The notice of appeal shall be deemed to appeal the disposition of all post-judgment motions that are timely filed after entry of the judgment or order.

The timely filing of a motion to amend findings or to reconsider, alter or amend an order "renders any notice of appeal filed before it null and void." See Richardson, 76 Hawai'i at 502, 880 P.2d at 177 (construing former HRAP Rule 4(a)(4)). MV's motion for reconsideration of the December 16, 2015 order was filed on December 28, 2015, within the time required by Rule 59 of the Hawai'i Family Court Rules (**HFCR**) (eff. 2015). The Family Court had jurisdiction to decide MV's motion for reconsideration and entered its order granting the motion on February 1, 2016, well within the ninety-day deadline set by HRAP Rule 4(a)(3).

### B.   The Family Court Did Not Erroneously Allow MV to Retain the House

WV incorrectly contends that the Family Court erred by concluding that the Divorce Decree allowed MV to retain the House.  Division of marital property is discretionary with the family court and will not be disturbed on review unless abuse of discretion is clearly shown.  Farias v. Farias, 58 Haw. 227, 231, 566 P.2d 1104, 1108 (1977).  "Under the abuse of discretion standard of review, the family court's decision will not be disturbed unless the family court disregarded rules or principles of law or practice to the substantial detriment of a party litigant and its decision clearly exceeded the bounds of reason."  In re Doe, 77 Hawai'i 109, 115, 883 P.2d 30, 36 (1994) (cleaned up).

WV does not dispute that although she and MV held title to the House as tenants by the entirety, MV was the sole obligor under the note and mortgage that were in default.  The Divorce Decree states that the House "is awarded to [MV] as tenant in severalty effective upon the entry of the Decree in this matter." (Underscoring omitted.)  MV was directed to "sell the [House] or negotiate the disposition of the [House] with the [lender] or its successor, in settlement of" then-pending litigation relating to the mortgage.  (Underscoring added.)  On the date of divorce MV's indebtedness under the mortgage was approximately $839,249.  MV was able to "negotiate the disposition of the [House]" through a HAMP settlement and a dismissal of the pending litigation.  The HAMP settlement required that MV be the owner-occupant of the House.  The Family Court's December 16, 2015 order based upon the tentative terms of the HAMP settlement was consistent with the Divorce Decree and was not an abuse of discretion.

WV also contends that the Family Court erred because it "did not provide any reasonable means for [WV] to obtain that money [i.e., the Family Court's original calculation of WV's share of net equity]."  WV's contention on this point is moot because the Family Court did not err in reconsidering the December 16, 2015 order in light of the actual loan modification terms and awarding WV zero; this issue is discussed below.

## C.     Finding of Fact No. 15 Is Moot

The Family Court entered the following finding of fact (FOF):

> 15.    At the October 2, 2015 hearing, [MV] testified that the loan was being modified for $742,000, but he did not have the final paperwork.  The Court found that the value of the loan at the time of the decree was $839,000.  Since the loan was being modified for $742,000 then [WV]'s one half (1/2) share of the proceeds realized from that modification would be $48,500.  Therefore, [MV] owed [WV] $48,500.

This point is moot because we affirm the Family Court's February 1, 2016 order that awarded zero to WV (discussed below). However, in making and opposing the point both parties display a remarkably disturbing ignorance of — or disregard for — the record.

WV contends that the Family Court erred because it should have utilized the $868,000 appraised value of the House instead of the $839,000 loan balance in calculating how much MV owed WV.  WV's Exhibit 30 was the appraisal report, dated August 1, 2015, admitted during the hearing on August 14, 2015. That document indeed showed an appraised value for the House of $868,000 as of July 23, 2015.  But WV's appraiser later submitted a revised report, dated August 14, 2015, attached to WV's supplemental memorandum filed on September 30, 2015.  The revised report shows an appraised value of $846,000 as of August 14, 2015.  WV offers no explanation for why she failed to identify the amended report in her briefs, why she disregarded the amended report in her argument, or why we should base our decision on the original report and disregard the amended report.

MV argues that his expert valued the property at $770,000.  His expert is a real estate broker, not an appraiser. His expert's declaration does not contain an opinion on market value; it states only that the 2015 property tax assessed value of the House was $749,300.  MV also argues that "[t]he Divorce Decree relied on the tax assessed value of the Property" and that "The [Divorce] Decree Used the Tax Assessed Value of the Property."  Neither the Divorce Decree nor any of the orders entered in connection with the parties' motions for post-decree

10

relief rely upon the real property tax assessed value of the House.

On the date of divorce the balance owed by MV on the note and mortgage for the House was $839,249. The Divorce Decree directed that MV either sell the House or settle the foreclosure proceedings. If the sale or settlement yielded net proceeds, they were to be divided equally between WV and MV; any loss (including a deficiency judgment in foreclosure) would be MV's sole responsibility. MV settled the foreclosure by agreeing to an $842,106 loan modification. In other words, MV incurred an $842,106 debt to cure his $839,249 default. His overall debt increased by $2,857. There were no net proceeds. The Family Court did not err by awarding zero to WV.

### D.    Finding of Fact No. 23 Was Not Clearly Erroneous

The Family Court entered the following FOF:

23.    On December 28, 2015, [MV] filed a Motion for Reconsideration of the December 16, 2015 Order. [MV] claimed that he believed the loan modification amount based on his credit report would be $742,000, however, the actual loan modification amount based on the final paperwork from Carrington Mortgage came out to $842,006.80 which was higher than the value of the loan at the time of the decree. This information was not available to [MV] at the time of the October 2, 2015 hearing. The [Family] Court granted [MV]'s Motion for Reconsideration and found that there were no proceeds to divide from the loan modification.

The family court's findings of fact are reviewed on appeal under the "clearly erroneous" standard. Fisher v. Fisher, 111 Hawai'i 41, 46, 137 P.3d 355, 360 (2006).

A FOF is clearly erroneous when (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is nonetheless left with a definite and firm conviction that a mistake has been made. "Substantial evidence" is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.

Id. FOF no. 23 was not clearly erroneous. The Divorce Decree states that the balance of MV's mortgage was $839,249. During the October 2, 2015 hearing MV informed the Family Court that he thought the loan modification amount was going to be $742,000,

11

but the lender did not "know what the modified loan amount is until . . . they get the final loan documents." MV did not receive the final loan documents until more than one month after the hearing. The loan documents showed a modified loan amount of $842,106.80. The modified loan amount was higher than the outstanding loan balance recited in the Divorce Decree. The final loan documents were not available to MV at the time of the hearing. To settle the disposition of the House, MV agreed to incur additional debt in exchange for deferred collection of $112,868.68 of principal and interest that would otherwise accrue, and a waiver of all accrued late charges, among other things. There is no evidence cited by WV to establish that MV received any cash when the loan modification closed. The Family Court's finding that there were no proceeds from the loan modification to distribute to WV was not clearly erroneous. The Family Court's February 1, 2016 order granting MV's motion for reconsideration is affirmed.

## E. Conclusion of Law No. 3 Was Not Wrong

The Family Court made the following conclusion of law (**COL**):

> 3. The disposition of Real Property is addressed in section 19 of the [Divorce] Decree and this Court's jurisdiction is limited to enforcement issues regarding that paragraph. The decree awarded [MV] the [House] and the authority to negotiate a sale or settlement. [MV] was to be responsible for any liability arising from the sale or disposition. The parties were to split any proceeds that may arise from the sale or disposition. The [Divorce] Decree does not require a sale of the property. In this case, [MV] was able to obtain a loan modification. The loan modification came in slightly higher than the value of the loan at the time of the Decree, so there were no proceeds to split between the parties. At the time of the [Divorce] Decree the property was in foreclosure. The Loan modification removed [WV]'s name from the mortgage and places the entire loan amount in [MV]'s name, which was what was required under Section 19 of the Divorce Decree.

The family court's conclusions of law are reviewed on appeal <u>de novo</u>, under the right/wrong standard. <u>Fisher</u>, 111 Hawai'i at 46, 137 P.3d at 360.

12

WV contends that the Family Court erred by modifying the property division provisions of the Divorce Decree. Her contention is premised upon the argument that the Divorce Decree required that MV sell the House. As was discussed above, the Divorce Decree gave MV the option to "negotiate the disposition" of the House with the mortgage lender, which he did. COL no. 3 was not wrong.

### MV's Cross-Appeal

MV's cross-appeal raises two points of error.

### A. MV's Cross-Appeal from the December 16, 2015 Property Division Order Is Moot

MV's cross-appeal from the Family Court's December 16, 2015 order awarding WV $48,500 as her share of the proceeds from the loan modification is moot because we affirm the Family Court's February 1, 2016 order granting MV's motion for reconsideration, which awards zero to WV.

### B. The Family Court Did Not Err by Applying the Child Support Guidelines

MV contends that the Family Court erred by applying the Hawai'i Child Support Guidelines and failing to do an "unmet needs analysis" for MV2, an adult full-time student.

### 1.

WV challenges appellate jurisdiction over MV's cross-appeal from the August 14, 2015 order regarding support for MV2. She argues that MV's cross-appeal from the Family Court's child support orders is untimely because the "last order related to the child support issue was entered on August 14, 2015," and MV's "Notice of Appeal was filed on December 18, 2015, over three months after the 30 day deadline."

We disagree with WV on the issue of appellate jurisdiction. WV's and MV's post-decree motions both sought modification of child support obligations and of the division and distribution of marital property and debts. The Family Court

entered orders pertaining to the post-decree motions on May 13, 2015; July 2, 2015; August 4, 2015; August 14, 2015; November 18, 2015; December 16, 2015; December 28, 2015; February 1, 2016; and February 19, 2016. Although the August 14, 2015 order was the last to specifically mention child support, it did not completely resolve either of the motions for post-decree relief. The other issues raised by those motions — property and debt division — remained undecided. Because the August 14, 2015 order did not resolve all the issues raised by either of the parties' post-decree motions, it was not a "final order" from which an appeal could have been taken. See Familian Nw., Inc. v. Central Pac. Boiler & Piping, Ltd., 68 Haw. 368, 369-70, 714 P.2d 936, 937 (1986) ("'Final order' means an order ending the proceedings, leaving nothing further to be accomplished. Consequently, an order is not final if the rights of a party involved remain undetermined or if the matter is retained for further action.") (citations omitted).

## 2.

MV contends that the Family Court erred by applying the Hawai'i Child Support Guidelines (**Guidelines**)[7] and failing to do an "unmet needs analysis" for MV2, an adult full-time student. MV fails to describe what an "unmet needs analysis" is or how it should have been applied by the Family Court in this case, either in lieu of or in addition to the Guidelines. He cites Jaylo v. Jaylo, 125 Hawai'i 369, 262 P.3d 245 (2011), but fails to make any argument as to how or why Jaylo applies in this case.

"[T]he statutory framework relating to child support mandates that the family courts utilize the Guidelines in setting and modifying child support orders." PO v. JS, 139 Hawai'i at 441-42, 393 P.3d at 993-94 (discussing HRS §§ 571-52.5, 576D-7, and 584-15); see also HRS § 580-47 (1993 & Supp. 2015) ("In establishing the amounts of child support, the court shall use

---

[7] The Guidelines applicable to this case went into effect on February 15, 2015, see https://www.courts.state.hi.us/docs/form/oahu/child_ support/csg_memo.pdf (last visited Oct. 9, 2019), and may be found at https://www.courts.state.hi.us/docs/form/oahu/child_support/child_support_guid elines.pdf (last visited Oct. 9, 2019).

the guidelines established under section 576D-7."). HRS § 576D-7 (1993) provides, in relevant part:

(a)     The family court, in consultation with the [CSEA], shall establish guidelines to establish the amount of child support when an order for support is sought or being modified under this chapter.  The guidelines shall be based on specific descriptive and numeric criteria and result in a computation of the support obligation.

The guidelines may include consideration of the following:

(1)     All earnings, income, and resources of both parents; provided that earnings be the net amount, after deductions for taxes, and social security.  Overtime and cost of living allowance may be deducted where appropriate;

(2)     The earning potential, reasonable necessities, and borrowing capacity of both parents;

(3)     <u>The needs of the child for whom support is sought;</u>

(4)     The amount of public assistance which would be paid for the child under the full standard of need as established by the department;

(5)     The existence of other dependents of the obligor parent;

(6)     To foster incentives for both parents to work;

(7)     To balance the standard of living of both parents and child and avoid placing any below the poverty level whenever possible;

(8)     To avoid extreme and inequitable changes in either parent's income depending on custody; and

(9)     If any obligee parent (with a school age child or children in school), who is mentally and physically able to work, remains at home and does not work, thirty (or less) hours of weekly earnings at the minimum wage may be imputed to that parent's income.

(b)     The guidelines shall be:

(1)     Applied statewide;

(2)     To simplify the calculations as much as practicable;

(3)     Applied to ensure, at a minimum, that the child for whom support is sought benefits from the income and resources of the obligor parent on an equitable basis in comparison with any other minor child of the obligor parent;

(4)     Established by October 1, 1986; and

(5)     Transmitted to the agency and all family court judges when available or updated, and shall be considered by the judges in the establishment of each child support order.

          (c)   The family court, in consultation with the
[CSEA], shall update the guidelines at least once every four years.

(Underscoring added.)  Thus the Guidelines contemplate analysis of "[t]he needs of the child for whom support is sought."  The record contains no facts to support MV's argument that the Family Court erred in applying the Guidelines.

## III.

     For the foregoing reasons the Family Court's order regarding support for SV3 and MV2, entered on August 14, 2015, and the Family Court's order granting MV's motion for reconsideration of the disposition of the House, entered on February 1, 2016, are affirmed.

     DATED:  Honolulu, Hawai'i, October 17, 2019.

On the briefs:

Dominique M. Tansley,
for Plaintiff-Appellant.

MV,
Self-Represented
Defendant-Appellee.

Presiding Judge

Associate Judge

Associate Judge